DONALD D. JOYNER, EMPLOYEE v. A. J. CAREY OIL COMPANY, INC., EM-
PLOYER; EMPLOYERS MUTUAL CASUALTY COMPANY, CARRIER.

(Filed 4 February, 1966.)

**1. Master and Servant § 69—**

Compensation for an employee who holds separate jobs must be based
exclusively upon his average weekly wage in the employment in which the
injury occurs.

**2. Same—**

The intent of G.S. 79-2(5) is that results fair and just to both the em-
ployer and employee be obtained in computing the amount of an award,
and the statute requires that the basis of computation be that amount
which will most nearly proximate the amount which the injured employee,
except for the injury, would be earning in the employment in which he
was working at the time.

**3. Master and Servant § 68—**

Where the evidence conclusively shows that the employer hired an
extra driver only during his peak seasons and that some weeks of the
year the job was nonexistent, the employment cannot be treated as though
it were a continuous one with regular wages, and fairness to the employer
requires that both the peak and slack periods be taken into consideration.

**4. Same—**

The evidence disclosed that an employer employed an extra driver only
during his peak seasons, and the evidence further disclosed the amount
that claimant and his predecessor in the job had been paid for the 52
weeks prior to the injury, and there was no evidence that this period was
exceptional. *Held:* The proper method of computing compensation is to
divide the amounts earned by claimant and his predecessor during the 12
months' period by 52.

APPEAL by defendants from *Clark, S.J.,* April, 26, 1965 Civil Ses-
sion of LENOIR.

Proceeding under the Workmen's Compensation Act.

The material facts are not in dispute. Plaintiff, 27 years old, was
regularly employed for five and one-half days per week as claims
superintendent for Local Linen Service of Kinston (Linen Service)
at a weekly wage of $128.00. From June 25, 1963 until August 31,
1963, he also held a part-time job with defendant A. J. Carey Oil
Company, Inc. (Oil Company), driving a tanker between Kinston
and Wilmington at $9.00 per round trip. On August 31, 1963, when
plaintiff had been driving only about two months, he was involved
in a collision. The tanker overturned and, as a result, plaintiff is
permanently paralyzed from his waist down. He also received other
injuries minor by comparison. The Commission found him to be
totally and permanently disabled.

At the time of his injury, plaintiff had made 26 trips for defendant Oil Company: 3 in June, 8 in July, and 15 in August. In these 10 weeks he had earned $234.00. During the winter months and during July and August, when the farmers are curing tobacco, Oil Company's regular driver cannot take care of the loads, and defendant employs an additional part-time driver. Plaintiff's predecessor in this part-time job was Dan Whitehurst, who, according to the testimony of defendant's bookkeeper worked from September 1, 1962, until June 6, 1963. During this period, his total earnings, for 90 trips at $9.00 each, were $810.00. Between the time Whitehurst made his last trip and plaintiff made his first, Oil Company had no need for a part-time driver. The written record of trip schedules and amounts earned by Whitehurst which the witness filed with the hearing commissioner show a total of only 86 trips made during 26 weeks from September 6, 1962, to March 6, 1963, inclusive. If the written record is correct, there were 16 weeks during which Oil Company needed no part-time driver. If the bookkeeper is correct, only 3 weeks.

The Commission found: (1) Plaintiff's average weekly wages during 10 weeks as an employee of Oil Company were $23.40. (2) Whitehurst's average weekly wage during 26 weeks of similar employment was $31.15. (The Commission apparently accepted the bookkeeper's *testimony* as to Whitehurst's earnings and the written *record* as to the number of weeks in which the sum was earned.) (3) Combining the weeks worked (36) and wages earned ($1,-044.00) by both plaintiff and Whitehurst, defendant paid an average weekly wage of $29.00 for their services. (This figure was obtained by dividing weeks worked into wages earned.) (4) Plaintiff's average weekly wage as an employee of both Linen Service and Oil Company was $151.40 ($128.00 plus $23.40). Upon these facts the Commission found that:

> "It would be manifestly unfair to the employee to take his earnings for the extra work he was doing at the time of his injury to establish his average weekly wage, since this would establish his average weekly wage at approximately one-fifth of what he was actually earning, and for this exceptional reason it is found as a fact that such a method of computation would be unfair and that it would not most nearly approximate the amount which the injured employee would be earning were it not for the injury. . . ."

Concluding as a matter of law "that plaintiff's average weekly wage prior to the admitted injury by accident was $151.40," the Commission awarded plaintiff compensation for total and permanent dis-

ability at the rate of $37.50 per week for life. The Superior Court affirmed this award. Defendants appeal, assigning as error (1) the inclusion of plaintiff's wages from Linen Service in fixing his average weekly wages for the purpose of compensation, and (2) the method by which the Commission established the average weekly wages which plaintiff earned while driving a tanker for Oil Company.

LaRoque, Allen & Cheek by G. Paul LaRoque for plaintiff appellee.
Wallace and Langley by P. C. Barwick for defendant appellants.

SHARP, J. The first question presented by this appeal is decisively answered by the opinion in Barnhardt v. Cab Co., ante, p. 419. When an employee who holds two separate jobs is injured in one of them, his compensation is based only upon his average weekly wages earned in the employment producing the injury. This case and Barnhardt point out a hiatus in our Workmen's Compensation Act which the Legislature may wish to bridge to prevent future duplication of these unhappy results.

The second question posed is whether the Commission used the correct method to ascertain plaintiff's average weekly wages from Oil Company. In determining them to have been $23.40, the Commission used the second method contained in G.S. 97-2(5). This method provides:

"Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained."

Defendants contend that, since the oil business is seasonal, it is unfair to defendant employer to use this method because it gives plaintiff the advantage of wages earned in the "peak" tobacco-curing season without taking into account the slack periods in which the Oil Company employs no relief driver. Defendants contend that the Commission should have employed the fourth method in G.S. 97-2(5) which provides:

"But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will

most nearly approximate the amount which the injured employee would be earning were it not for the injury."

Had plaintiff been the only relief driver employed by Oil Company for the twelve months preceding his injury, he would not have worked every week. The compensation which he collects, however, — whatever the amount — will be paid every week. The dominant intent of G.S. 97-2(5) is that results fair and just to both employer and employee be obtained. Results fair and just, within the meaning of the statute "consist of such 'average weekly wages' as will most nearly approximate the amount which the injured employee *would be earning* were it not for the injury, in the employment in which he was working at the time of his injury." *Liles v. Electric Co.,* 244 N.C. 653, 660, 94 S.E. 2d 790, 796.

Whitehurst's employment began September 1, 1962, and plaintiff's ended on August 31, 1963. Whether Whitehurst's employment ended on March 6th or June 6th, the evidence is that between the time it ended and plaintiff's began, Oil Company had no need for a part time or relief driver and employed none. Plaintiff and Whitehurst did the same work for the same employer and were paid the same wages. Theirs was, in effect, one continuous employment for which we have a complete record during the 52 weeks preceding plaintiff's injury. This employment is inherently part-time and intermittent. It does not provide work in each of the 52 weeks of the year; some weeks the job is non-existent. It cannot, therefore, be treated as if it were a continuous one with regular wages. Fairness to the employer requires that we take into consideration both peak and slack periods.

There is nothing in the evidence to indicate that the period from September 1, 1962, through August 31, 1963, was not a typical year. The total of Whitehurst's and plaintiff's wages during this 12-month period was $1,044.00. "Were it not for the injury," plaintiff himself would not be earning more than this sum in a normal year. Dividing this figure by 52 gives an average weekly wage of $20.08, which takes into account all the trips for which a relief driver was typically required. This is the result which defendants contend the Commission should have reached under the "exceptional reasons" method, and we are constrained to agree that it is the proper one.

Plaintiff relies upon *Liles v. Electric Co., supra,* wherein this Court held that "upon this record the 'average weekly wages' of decedents are to be computed in accordance with the second method prescribed by G.S. 97-2(e) (now G.S. 97-2(5))." In *Liles,* however, *continuous,* part-time employment was available. There, it was the *employee* who was not available for full-time employment. This

case presents the converse of that situation, for here the employee was continuously available and the *job* was not. In *Liles*, the Court held that a part-time job could not be converted into a full-time job for the purpose of compensation. By the same token, an intermittent part-time job cannot here be treated as a continuous one. From the statement of facts in *Liles*, it appears that the period of the deceased worker's employment had been the "peak season." But, as the opinion points out, the record contained no evidence as to the amount which a part-time worker, such as decedent, had earned in the same or similar employment in the locality during the 52 weeks next preceding the injury. The record in this case does contain such evidence.

The judgment of the Superior Court overruling defendant's exceptions to the award of the Commission is vacated, and this cause is remanded to the Superior Court to the end that it enter a judgment returning the case to the Industrial Commission for the entry of an award in accordance with this opinion.

Error and remanded.