CLAIRE A. BARBER, Employee/Plaintiff v. GOING WEST TRANSPORTATION, INC., Employer/Defendant, and NON-INSURED, Carrier/Defendant

No. COA98-494

(Filed 3 August 1999)

**1. Workers' Compensation— employment relationship—jurisdiction—independent determination by appellate courts**

The Industrial Commission did not err in determining plaintiff truck driver was a regular employee of defendant rather than an independent contractor based on the factors of: (1) method of payment; (2) furnishing of equipment; and (3) direct evidence of exercise of control by defendant. Whether an employer-employee relationship exists is a jurisdictional issue requiring an independent determination by the appellate courts.

**2. Workers' Compensation— competent evidence—incapable of earning wages**

There was competent evidence to support the Industrial Commission's determination that plaintiff-employee, a truck driver, was incapable of earning wages as a result of her injury based on the medical evidence, her complaints of chronic leg and back pain related during each visit to her physicians, and her continuing pain treatment and doctor visits as of the hearing date.

**3. Workers' Compensation— average weekly wage—fluctuating schedule—exceptional reasons method**

The Industrial Commission erred in determining plaintiff-employee's average weekly wage because plaintiff's fluctuating work schedule qualified her job more as "seasonal" rather than continuous employment. The plaintiff's average weekly wage should be calculated under the "exceptional reasons" method. N.C.G.S. § 97-2(5).

Appeal by defendant Going West Transportation, Inc., from Opinion and Award of the North Carolina Industrial Commission filed 15 December 1997. Heard in the Court of Appeals 18 February 1999.

*Janine W. Dunn, for defendant-appellant.*

*Brumbaugh, Mu and King, P.A., by Leah D. Lassiter, for plaintiff-appellee.*

BARBER v. GOING WEST TRANSP., INC.

[134 N.C. App. 428 (1999)]

JOHN, Judge.

Defendant appeals an Opinion and Award of the North Carolina Industrial Commission (the Commission) granting plaintiff temporary total disability compensation. Defendant contends the Commission erred in 1) classifying plaintiff as an employee rather than an independent contractor, 2) finding plaintiff was incapable of earning wages from any employer as result of her lumbosacral strain, and 3) setting plaintiff's average weekly wage at $548.94. For reasons set forth herein, we remand to the Commission for re-calculation of plaintiff's average weekly wage in compliance with N.C.G.S. § 97-2(5) (Supp. 1998).

Pertinent facts and procedural information include the following: Defendant is a provider of long haul transportation services specializing in produce shipment with its home office in Burgaw, N.C. On 3 February 1996, plaintiff, a tractor trailer driver operating a truck owned by defendant, was involved in an out-of-state collision with an automobile. Plaintiff subsequently sought treatment at the Onslow Family Medical Center 8 February 1996 for pain in her lower back and hips and received medication.

On 20 February 1996, plaintiff presented to Onslow Memorial Hospital with numbness in her hands and legs and pain in her lower back and left buttock and was excused from work pending examination by orthopedist Dr. Jeffery L. Gross (Dr. Gross). On 6 March 1996, Dr. Gross diagnosed plaintiff with lumbosacral strain, referred her to physical therapy for a strengthening program, and excused her from work based upon her inability to sit for prolonged periods of time without pain. After months of unsuccessful treatment, Dr. Gross sought a second opinion from Dr. Ellis Muther (Dr. Muther). On 18 September 1996, Dr. Muther concluded plaintiff suffered from a bilateral L5 radiculopathy.

On 7 October 1996, Dr. Gross referred plaintiff to Dr. Scott Johnston (Dr. Johnston) for pain management. Dr. Johnston began treating plaintiff with caudal epidural steroid injections which temporarily reduced her pain symptoms. Following a 7 November 1996 examination, Dr. Johnston reported that plaintiff continued to experience "chronic low back pain and left lower extremity pain," and upon plaintiff's inquiry informed her she could return to work in a progressive fashion "at her leisure."

Defendant had no policy of workers' compensation insurance in effect on 3 February 1996, but agreed to compensate plaintiff at the

rate of $306.15 a week until she was able to resume work. Defendant paid plaintiff a total of $5,184.55 between 23 February 1996 and 21 June 1996, but discontinued payments upon receiving plaintiff's demand for additional compensation. Plaintiff thereupon filed a workers' compensation claim 24 June 1996, which claim was heard 21 November 1996 before a Deputy Commissioner.

During the hearing, plaintiff testified she was unable to work and that her doctors had not yet released her to return to work. As of the hearing date, plaintiff was continuing to see Dr. Gross and receive treatments from Dr. Johnston. Subsequently, on 14 January 1997, Dr. Gross determined plaintiff had reached maximum medical improvement, but indicated she was to return upon any increase in symptoms and that Dr. Johnston would continue treatments for her chronic back pain.

On 26 March 1997, the Deputy Commissioner filed an Opinion and Award ruling, *inter alia*, that plaintiff was "a regular employee of defendant" and entitled to temporary total disability compensation at the rate of $365.97 per week from 4 February 1996 until otherwise ordered by the Commission, as well as payment of all medical expenses. Defendant appealed to the Full Commission which filed an Opinion and Award 15 December 1997 adopting the Deputy Commissioner's findings, conclusions, and award, but remanding in regards to imposition of a penalty in consequence of defendant's failure to maintain a policy of workers' compensation insurance.

[1] On appeal to this Court, defendant first contends the Commission erred in determining plaintiff was a regular employee of defendant. The latter argues plaintiff was an independent contractor not subject to the North Carolina Workers' Compensation Act, N.C.G.S. § 97-1 (1991 & Supp. 1998) (the Act). We do not agree.

A workers' compensation claimant "must be, in fact and in law, an employee of the party from whom compensation is claimed." *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988). Whether an employer-employee relationship exists is a jurisdictional issue, *Lucas v. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976), and unlike most findings by the Commission, "findings of jurisdictional fact . . . are not conclusive, even when supported by competent evidence," *Youngblood*, 321 N.C. at 383, 364 S.E.2d at 437. This Court thus must "review the evidence of record" and make an independent determination of plaintiff's employment status, *id.*, guided "by the application of ordinary common law tests,"

*Richards v. Nationwide Homes*, 263 N.C. 295, 302, 139 S.E.2d 645, 650 (1965).

An independent contractor is one who

contracts to do a piece of work according to his own judgment and methods, and without being subject to his employer except as to the result of the work.

*Hayes v. Elon College*, 224 N.C. 11, 15, 29 S.E.2d 137, 140 (1944). On the other hand, an employment relationship exists where the employer retains the right to control and direct the manner in which details of the work are to be executed and what shall be done as the work progresses. *Id.*

While not conclusive individually, certain factors ordinarily indicative of whether control incident to an employment relationship has been retained include: 1) method of payment, 2) furnishing of equipment, and 3) direct evidence of exercise of control. *Youngblood*, 321 N.C. at 384-85, 364 S.E.2d at 437-38. Upon review of the instant record in light of the foregoing factors, we conclude an employment relationship existed between plaintiff and defendant.

Notably, the "Contract Driver Handbook" (the Handbook), furnished by defendant to each driver, reflects plaintiff and her husband, as team drivers, were paid each Friday in an amount equal to 26% of that week's haul. Generally, payment according to units of time, *i.e.*, per week, is considered an emolument of employment, *see* 3 Arthur Larson, *The Law of Workmen's Compensation* § 61.06(1) (1999), whereas an independent contractor is customarily paid a fixed contract price or lump sum, *Hayes*, 224 N.C. at 16, 29 S.E.2d at 140. Although plaintiff had entered into a "Non-Exclusive Contract" with defendant's predecessor on 8 August 1994, which agreement had expired, no similar contracts were subsequently signed. However, plaintiff generally agreed to the weekly pay method provided in the Handbook by signing an acknowledgment and pledge of adherence to the Handbook rules on 8 April 1995.

The treatment and classification of drivers for taxation purposes is related to method of payment. In January 1995, defendant began deducting federal and state taxes and health insurance and social security costs from drivers' checks following an IRS demand that it classify alleged "contract" drivers as "employees" and withhold taxes. Archie McGirt (McGirt), CEO and president of defendant, informed drivers of their new taxable employee status. According

to McGirt, although plaintiff continued to drive, many others quit as a result.

Moreover, the Handbook provided regulations and rules governing the operation and maintenance of defendant's trucks by drivers. Handbook provisions included: 1) instructions both on the location and timing of the reporting by drivers for deliveries and pick-up and on the preparation and submission of log books and other paper work; 2) a directive to travel approved routes without deviation; 3) a mandate to submit required mileage reports each Monday; 4) orders to call defendant twice a day between 8:00 a.m. and 10:00 a.m. and between 4:00 p.m. and 6:00 p.m., and upon reaching pick-up or delivery destinations; and 5) guidelines for truck maintenance including oil, fuel and water changes, washing and waxing, and tire monitoring. Failure to call in as directed or to observe paperwork completion schedules could result in imposition of a $25.00 fine. In addition, drivers were subject to random drug testing, the cost of which was deducted from their pay, and positive drug test results constituted cause for immediate termination.

Regulations such as the foregoing, mandating that drivers perform in a certain manner and "conform to a particular schedule," *Youngblood*, 321 N.C. at 385, 364 S.E.2d at 438, are indicative of employee status as opposed to that of an independent contractor who may choose the time and manner of performance, *id.*

Additionally, the trucks operated by the drivers were owned, insured and maintained by defendant, and drivers were issued Comcash and Comcheck cards in defendant's name for fuel purchases. When valuable equipment is furnished for use of a worker, an employee relationship almost "invariably" is established. *Id.*

In short, we conclude the record reflects an employer-employee relationship between defendant and plaintiff.

Notwithstanding, defendant argues drivers such as plaintiff furnished specialized skills and knowledge necessary to obtain and deliver loads, thereby indicating they functioned as independent contractors. However, although defendant's drivers may have possessed specialized skills and required little supervision, such circumstance alone is not determinative of independent contractor status, *Durham v. McLamb*, 59 N.C. App. 165, 168-69, 296 S.E.2d 3, 6 (1982) (citing *Lloyd v. Jenkins Context Co.*, 46 N.C. App. 817, 819, 266 S.E.2d 35, 37 (1980)), and is in any event outweighed in the case *sub judice* by the

evidence of other factors, *see Youngblood*, 321 N.C. at 384-85, 364 S.E.2d at 437-38.

[2] Defendant next argues that no competent evidence in the record supports the Commission's finding that plaintiff was incapable of earning wages as a result of her lumbosacral strain. This contention is unfounded.

The Commission rendered the following pertinent findings of fact:

10. On Saturday, 3 February 1996, plaintiff . . . w[as] involved in a collision with another vehicle. . . . Initially, plaintiff did not believe that she was injured in the collision. However, she began to experience pain the following day.

11. On 8 February 1996, plaintiff presented to Onslow Family Medical Center. On that date, plaintiff had pain in her low back and hips. Plaintiff was prescribed medications and referred to physical therapy beginning 13 February 1996.

12. On 20 February 1996, plaintiff presented to Onslow Memorial Hospital . . . [with] numbness in her hands and legs and pain in her lower back and left buttock. Plaintiff's medications were changed and she was excused from work until she attended an appointment that was scheduled with Dr. Gross on 6 March 1996. When plaintiff presented to Dr. Gross, she had a lumbosacral strain, with no neurological deficits. Dr. Gross referred plaintiff to physical therapy for a strengthening program and excused plaintiff from work due to her inability to sit for prolonged periods of time. Dr. Gross continued to excuse plaintiff from work through 23 July 1996.

13. On 18 September 1996, plaintiff presented to Dr. Muther who performed EMG and NCV testing. These studies revealed that plaintiff had a bilateral L5 radiculopathy, left greater than right. Thereafter, plaintiff continued under the care of Dr. Gross, who eventually referred her to Dr. Johnston for pain management. Dr. Johnston treated plaintiff with epidural steroid injections which diminished plaintiff's symptoms, at least temporarily. Dr. Johnston continued to treat plaintiff through the date of the hearing in this case.

14. Plaintiff reached maximum medical improvement on [1]4 [sic] January 1997. There is no evidence of record whether plain-

tiff retained any permanent impairment as a result of the incident on 3 February 1996.

. . . .

16. As a result of her lumbosacral strain, plaintiff was incapable of earning wages from defendant, or any other employer from 4 February 1996 through the date of the hearing in this case.

Pertinent conclusions of law include:

3. On 3 February 1996, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant.

4. Plaintiff is entitled to payment of temporary total disability compensation at the rate of $365.97 per week from 4 February 1996 and continuing until order of the [Commission] allowing defendant to cease payment. . . .

In reviewing an Opinion and Award of the Commission, this Court must determine whether there is any competent evidence in the record to support its findings of fact and whether those findings support the conclusions of law. *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 129, 468 S.E.2d 283, 286, *disc. review denied*, 343 N.C. 513, 472 S.E.2d 18 (1996). The Commission has the "exclusive authority to find facts necessary to determine workers' compensation awards," *Matthews v. Petroleum Tank Service, Inc.*, 108 N.C. App. 259, 264, 423 S.E.2d 532, 535 (1992), and its findings are conclusive on appeal if supported by any competent evidence, even though there may be evidence which would support contrary findings, *id.* Further, the Commission, as sole judge of the credibility of witnesses and the weight to be given their testimony, may reject the testimony of any witness. *Anderson v. Northwestern Motor Co.*, 233 N.C. 372, 376, 64 S.E.2d 265, 268 (1951).

To qualify as "disabled" under N.C.G.S. § 97-2(9) (Supp. 1998), an employee must show the inability to earn the same wages earned prior to injury, either in the same employment or in any other employment. G.S. § 97-2(9). Disability, consisting of impairment of the injured employee's earning capacity rather than physical disablement, *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 434, 342 S.E.2d 798, 804 (1986), may be proven by production of medical evidence that the employee is, as a consequence of the work related injury, physically or mentally incapable of work in any employment, *id.* at 444, 342

S.E.2d at 809. If an employee presents substantial evidence he or she is incapable of earning wages, the employer must then

> come forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations.

*Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990).

Thorough review of the record reflects substantial competent evidence supporting the Commission's determination plaintiff was incapable of earning her previous wages in any employment. For example, Dr. Gross diagnosed plaintiff with lumbosacral strain on 6 March 1996 and excused her from work based upon her inability to sit for prolonged periods of time without pain. Dr. Gross saw plaintiff every few weeks following her injury and extended the work exemption through plaintiff's 23 July 1996 appointment because of her continued pain. On 3 September 1996, Dr. Gross reported plaintiff had "chronic pain in the back and it bother[ed] her to sit," and decided, "because of her continued difficulty[, to] get a second opinion" from Dr. Muther, who later diagnosed plaintiff with bilateral L5 radiculopathy and suggested epidural steroid injections.

On 7 October 1996, Dr. Gross noted Dr. Muther's diagnosis, but determined he had nothing further to offer plaintiff "orthopedically" and that she should be seen by Dr. Johnston for pain management. On 17 October 1996, Dr. Johnston diagnosed plaintiff with "chronic sacral and lower extremity pain, status post motor vehicle accident" and began caudal epidural steroid injections to reduce her sacral and coccygeal pain, but cautioned he did "not expect a great deal of benefit for her lower extremity pain." On 7 November 1996, upon plaintiff's inquiry, Dr. Johnston indicated she could "return to work at her leisure," but only in a "progressive fashion" and not full scale.

On 14 January 1997, examination of plaintiff by Dr. Gross revealed she continued to complain of chronic back pain and could remain seated only ten to fifteen minutes. He concluded plaintiff had reached maximum medical improvement, observing she should return to him upon any increase in symptoms and that she would continue pain treatments with Dr. Johnston. Plaintiff testified that she was prevented from returning to work following her injury due to pain, and that she was still "receiving steroid injection shots" from Dr. Johnston and continuing to see Dr. Gross as of the date of

hearing. She further testified that neither had released her to return to work.

The medical evidence, plaintiff's complaints of chronic leg and back pain related during each visit to her physicians, and plaintiff's continuing pain treatment and doctor visits as of the hearing date provide competent evidence supporting the Commission's determination that plaintiff was incapable of earning the same wages from defendant or another employer as a result of lumbosacral strain. Defendant failed to come forward with rebuttal evidence, and the Commission did not err. *See Cone Mills Corp.*, 316 N.C. at 443, 342 S.E.2d at 809; *see also Kennedy*, 101 N.C. App. at 33, 398 S.E.2d at 682.

[3] In its third assignment of error, defendant contends the Commission's finding that plaintiff's "average weekly wage was $548.94," is not supported by the evidence. We agree.

Pursuant to G.S. § 97-2(5), an injured employee's average weekly wage is:

the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . , divided by 52. . . .

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

G.S. § 97-2(5).

The parties stipulated in a Form 22 Wage Chart to the days and weeks plaintiff worked in 1995 and 1996 and to the earnings she received. Upon review of the Wage Chart, we note plaintiff did not work during 1995 in February, March, August, September or November, and reported working only eleven days in April, six days in July and seven days in December. In consequence of a fluctuating work schedule dependent in the main upon the produce season, plaintiff's job more properly qualified as "seasonal" rather than continuous employment. *See Joyner v. Oil Co.*, 266 N.C. 519, 522-23, 146 S.E.2d 447, 450 (1966).

In *Joyner*, our Supreme Court reviewed the circumstance of a relief truck driver who worked only on an as-needed basis during the

fifty-two weeks prior to injury. *Id.* The court described the driver's employment as "part-time and intermittent" and held it was "[un]fair[] to the employer . . . [not to] take into consideration both peak and slack periods" in calculating average weekly wage because "it gives plaintiff the advantage of wages earned in . . . peak . . . season without taking into account the slack periods" during which he did not work. *Id.* at 521, 146 S.E.2d at 450. Therefore, the court concluded, the driver's average weekly wage was to be calculated under the "exceptional reasons" method set forth in G.S. § 97-2(5). *Id.* at 522, 146 S.E.2d at 450.

In determining the driver's average wage, the *Joyner* Court took the total wages earned during the twelve month period prior to injury, noting that without the injury the driver "himself would not be earning more than this sum in a normal year," *id.*, and divided that amount by 52, representing the number of weeks in a year, *id.* Utilizing the same methodology herein, we observe plaintiff's total wages earned between February 1995 and February 1996 would equal a sum of $9,333.05, $7,178.12 earned in 1995 and $2,154.93 earned in 1996. Dividing that sum by 52 weeks results in an average weekly wage of $179.48, well below the figure of $548.94 per week or $28,544.88 annually calculated by the Commission.

The Commission's determination of plaintiff's average weekly wage is not supported by the evidence and its award contains no findings indicating how the amount of $548.94 was derived. The matter therefore must be remanded to the Commission for recalculation of plaintiff's average weekly wage and entry of related findings. The Commission shall rely on the existing record and receive additional evidence and argument from the parties in its sole discretion. *See Smith v. Smith*, 111 N.C. App. 460, 517, 433 S.E.2d 196, 230 (1993), *rev'd on other grounds*, 336 N.C. 575, 444 S.E.2d 420 (1994) (on remand, trial court to "rely on the existing record, . . . but may hear additional arguments from the parties and take such additional evidence as the court finds necessary to correct the errors identified herein").

Remanded with instructions.

Judges WALKER and McGEE concur.