PHILLIP E. LOCH, PLAINTIFF v. ENTERTAINMENT PARTNERS, EMPLOYER; CNA INSURANCE COMPANIES, CARRIER; DEFENDANTS

No. COA00-1113

(Filed 28 December 2001)

### 1. Workers' Compensation— average weekly wage—sporadic employment

The Industrial Commission erred in its calculation of a workers' compensation plaintiff's average weekly wage where plaintiff was an actor whose employment was sporadic. The Commission was justified in resorting to an alternate method of determining

LOCH v. ENTERTAINMENT PARTNERS

[148 N.C. App. 106 (2001)]

plaintiff's average weekly wage, but it is not clear which method the Commission used. N.C.G.S. § 97-2(5).

**2. Workers' Compensation— overpayment of benefits—credit to employer**

The Industrial Commission did not err by awarding a workers' compensation defendant a credit for overpayment of benefits where plaintiff was on notice that his benefits were subject to wage verification.

Appeal by plaintiff from an opinion and award entered 12 July 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 August 2001.

*Kathleen Shannon Glancy and Patterson, Harkavy & Lawrence, L.L.P., by Martha A. Geer for plaintiff-appellant.*

*Hedrick & Blackwell, L.L.P., by Sherman Lee Criner and Jerry L. Wilkins, Jr. for defendant-appellee.*

TIMMONS-GOODSON, Judge.

Phillip E. Loch ("plaintiff") appeals an opinion and award of the North Carolina Industrial Commission ("the Full Commission") reducing his award of workers' compensation benefits. For the reasons set forth herein, we remand to the Full Commission for recalculation of plaintiff's average weekly wage in compliance with N.C. Gen. Stat. § 97-2(5) (1999).

Pertinent facts and procedural information include the following: Plaintiff began employment on an occasional basis with Entertainment Partners ("defendant") in 1990. On 21 September 1996, defendant employed plaintiff as an actor for a few days work. The same day, plaintiff slipped on a step outside of his trailer, causing him to aggravate a pre-existing knee injury. Plaintiff was diagnosed with an acute contusion and sprain of his right knee. Despite his injury, plaintiff continued to work for defendant on 4 October and 11 October 1996. On 11 November 1996, Dr. Sutton performed partial knee surgery on plaintiff's right knee. Plaintiff reached maximum medical improvement on 1 July 1997, and was assigned a permanent disability rating of fifteen percent (15%) to his right knee, with restrictions on climbing, stooping, squatting, and crawling. Plaintiff was paid temporary total disability benefits pursuant to a Form 60 Agreement at the maximum compensation rate of $492.00, subject to wage verification.

LOCH v. ENTERTAINMENT PARTNERS

[148 N.C. App. 106 (2001)]

On 1 October 1997, defendant filed a claim with the Industrial Commission seeking to terminate or suspend payment of benefits because plaintiff had resumed working at an equal or higher wage. The parties agreed to submit the matter to the Deputy Commissioner, based on stipulated exhibits, for a determination of plaintiff's average weekly wage pursuant to N.C. Gen. Stat. § 97-2(5). After a hearing on the matter, Deputy Commissioner Phillip A. Holmes rendered an opinion and award on 28 August 1998, ruling, *inter alia*, that calculating plaintiff's average weekly wage under the first three calculations of N.C. Gen. Stat. § 97-2(5) results in an unfair and unjust calculation. The Deputy Commissioner concluded that plaintiff's average weekly wage must be calculated under the fourth method to ensure a fair and just result. The Deputy Commissioner calculated plaintiff's wages by dividing his highest earning over any fifty-two week period during his seven-year employment by fifty-two (52) weeks thus yielding an average weekly wage of $80.05 and a compensation rate of $53.37.

Plaintiff appealed this opinion and award to the Full Commission. The Full Commission rendered its opinion and award on 4 May 2000 with the following pertinent findings of fact and conclusions of law:

### Findings of Fact

7. Carrier-defendant subsequently obtained plaintiff's wage records and a completed Form 22 Wage Chart. The Form 22 Wage Chart shows no earnings by plaintiff in 1996 for the months of January through August. The Form 22 Wage Chart reflected earnings of $594.00 in September 1996 and $1,188.00 in October 1996. For November 1995, the Form 22 Wage Chart shows earnings of $1,234.53. Accordingly, in the twelve months preceding the injury, plaintiff earned a total of $3,016.53 working for defendant-employer which equates to an average weekly wage of $58.01, and a weekly compensation rate of $38.67.

8. Plaintiff's payroll records show the following yearly incomes earned between 1990 and 1996 while working for defendant-employer: 1990-$1,138.00; 1991-$492.80; 1992-$4,162.50; 1993-$1,895.57; 1994-$893.34; 1995-$2,734.59; 1996-$1,818.70.

### Conclusions of Law

2. Given the part-time and intermittent nature of plaintiff's work as an actor for the defendant-employer, calculation of plaintiff's average weekly wage under the first three calculations of N.C.

Gen. Stat. § 97-2(5) results in an unfair and unjust calculation which would not take into account the periods during which plaintiff did not work. Therefore, plaintiff's average weekly wage must be calculated under the fourth method under N.C. Gen. Stat. § 97-2(5) in order to ensure results which are fair and just to both employer and employee. *Joyner v. A.J. Carey Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1996); *Barber v. Going West Transportation, Inc* [134 N.C. App. 428, 517 S.E.2d 914 (1999)].

3. The undersigned conclude as a matter of law that plaintiff's average weekly wage must be calculated by taking the total earnings for the 52 weeks preceding his disability and dividing that amount by 52. *Barber v. Going West Transportation, Inc.* [134 N.C. App. 428, 517 S.E.2d 914 (1999)]. Plaintiff's earnings from defendant-employer during the 52 weeks prior to his disability total $3,016.53, which equates to an average weekly wage of $58.01, yielding a compensation rate of $38.67. N.C. Gen. Stat. § 97-2(5).

The Commission further concluded that defendant was entitled to a credit towards future indemnity benefits. Plaintiff appeals.

---

[1] On appeal, plaintiff assigns error to the Commission's computation of his average weekly wage. Specifically, plaintiff contends that the Commission erred by resorting to the "fourth method" of N.C. Gen. Stat. § 97-2(5) in calculating his average weekly wage. For the reasons discussed below, we agree.

First, we note that the role of this Court in reviewing an appeal from the Industrial Commission is limited to a determination of (1) whether the findings of fact are supported by competent evidence and (2) whether the conclusions of law are supported by the findings. *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980). Conclusions of law by the Industrial Commission are reviewable *de novo* by this Court. *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998).

Under N.C. Gen. Stat. § 97-2(5) average weekly wage is defined in pertinent part as

earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . divided by

52; but if the injured, employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly wage amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5) (1999).

It is clear from the language of the statute and prior holdings of this Court that N.C. Gen. Stat. § 97-2(5) establishes an order of preference and that the primary method is to calculate the total wages of the employee for the fifty-two weeks of the year prior to the date of the injury, divided by fifty-two. *Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 128, 532 S.E.2d 583, 586 (2000). The statute includes a "catch-all" provision, to be used when warranted by "exceptional reasons." *Postell v. B&D Construction Co.*, 105 N.C. App. 1, 7, 411 S.E.2d 413, 416, *disc. review denied*, 331 N.C. 286, 417 S.E.2d 253 (1992). However, the final method set forth in N.C. Gen. Stat. § 97-2(5) may not be used unless there has been a finding that.unjust results would occur by using the previous methods. *Wallace v. Music Shop*, 11 N.C. App. 328, 331, 181 S.E.2d 237, 239 (1971).

The primary intent of the N.C. Gen. Stat. § 97-2(5) is to make certain that the results reached are fair and just to both parties. *Liles v. Electric Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 795-96 (1956). In cal-

culating an employee's average weekly wage, the North Carolina Supreme Court has held that the average weekly wage should be based upon the injured employee's earning capacity. *Dereberry v. Pitt County Fire Marshall*, 318 N.C. 192, 197, 347 S.E.2d 814, 817 (1986). Therefore, the average weekly wage is determined by calculating " 'the amount which the injured employee would be earning were it not for the injury.' " *Id.* (quoting N.C. Gen. Stat. § 97-2(5)).

At the outset, we note that due to the sporadic nature of plaintiff's employment and the difficulty in making a precise calculation, the Commission was justified in resorting to an alternative method of determining his average weekly wage. Plaintiff worked for defendant for seven years but was assigned work only as it became available. In fact, the record reveals that work was not available in the acting field to plaintiff every week. In the fifty-two weeks prior to plaintiff's injury in 1996, plaintiff only worked a total of five days. In relying on *Joyner v. Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966), the Commission concluded that given the "part-time and intermittent" nature of plaintiff's employment, calculation under the first three methods of N.C. Gen. Stat. § 97-2(5) "results in an unfair and unjust calculation which would not take into account the periods which plaintiff did not work." Therefore, the Commission calculated plaintiff's average weekly wage under the "fourth method" of the statute.

Although N.C. Gen. Stat. § 97-2(5) does not numerically designate the methods for calculating average weekly wage, recent case law assigns numbers to the statutory methods for calculating average weekly wage with the fifth method being the "catch-all" provision. *See McAnich v. Buncombe County Schools*, 122 N.C. App. 679, 681, 471 S.E.2d 441, 443 (1996) (noting that the statute provides a "hierarchy" of five methods of computing the average weekly wage) *overruled on other grounds*, 347 N.C. 126, 489 S.E.2d 375 (1997); *Bond v. Foster Masonry Inc.*, 139 N.C. App. 123, 127, 532 S.E.2d 583, 585-86 (2000) (setting forth five methods of calculating average weekly wage). In light of recent case law, it is not clear which method the Commission employed in calculating plaintiff's average weekly wage.

On the one hand, the Commission concluded as follows:

2. Given the part-time and intermittent nature of plaintiff's work as an actor for the defendant-employer, calculation of plaintiff's average weekly wage under the first three methods of N.C. Gen. Stat. § 97-2(5) results in an unfair and unjust calculation which

would not take into account the periods during which plaintiff did not work. Therefore, plaintiff's average weekly wage must be calculated under the fourth method under N.C. Gen. Stat. § 97-2(5) in order to ensure results which are fair and just to both employer and employee.

However, calculation under this method would require comparing plaintiff's work with an employee of the "same grade and character . . . in the same locality or community" as required by § 97-2(5). The record contained no findings regarding the wages or annual earnings of comparable part-time actors. There was also no finding of whether the work provided by defendant was seasonal or how often employment was offered to the actors during any portion of the year. Without the related findings, the Commission could not properly conclude that calculation under the fourth method would ensure fair results.

On the other hand, the opinion and award of the Commission suggests that it employed the final "catch-all" method of the statute by quoting the language "fair and just" in their conclusions. However, without any explanation, it calculated plaintiff's wages under the first method of the statute and justified this calculation under the "catch-all" provision of the statute. We note that this method of calculation is not permitted under N.C. Gen. Stat. § 97-2(5) in computing plaintiff's average weekly wage, because plaintiff worked less than fifty-two weeks prior to his injury. While there existed an "exceptional reason" to resort to the final "catch-all" method of the statute because of the part-time nature of plaintiff's employment, the Commission was not permitted to circumvent the statute when calculation under the first method was otherwise inappropriate. Accordingly, those portions of the Full Commission's opinion and award based on a calculation of plaintiff's average weekly wage at $58.01 are reversed and this matter is remanded for recalculation of plaintiff's average weekly wage.

[2] Plaintiff next contends that the Commission erred in concluding that defendant is entitled to a credit for overpayment of benefits. Plaintiff therefore contends that he is entitled to keep temporary total disability benefits that were paid to him in the amount of $492.00 from 24 October 1996 through 24 September 1997. We disagree.

The decision of whether to grant a credit is within the sound discretion of the Commission. Such decision to grant or deny a credit will not be disturbed on appeal in the absence of an abuse of discre-

tion. *Moretz v. Richards & Associates*, 74 N.C. App. 72, 75, 327 S.E.2d 290, 293 (1985), *aff'd as modified*, 316 N.C. 539, 342 S.E.2d 844 (1986). This Court has held that N.C. Gen. Stat. § 97-42 is the only statutory authority for allowing an employer in North Carolina any credit against workers' compensation payments due an injured employee. *Johnson v. IBM*, 97 N.C. App. 493, 389 S.E.2d 121, 122 (1990), *disc. review denied*, 327 N.C. 429, 395 S.E.2d 679 (1990). N.C. Gen. Stat. § 97-42 provides:

> Payments made by the employer to the injured employee during the period of his disability . . . which by the terms of this Article were both due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation.

N.C. Gen. Stat. § 97-42 (1999). The rationale behind the statute is to encourage voluntary payments by the employer during the time of the worker's disability. *See Gray v. Carolina Freight Carriers*, 105 N.C. App. 480, 484, 414 S.E.2d 102, 104 (1992). In *Foster v. Western-Electric Co.*, 320 N.C. 113, 115, 357 S.E.2d 670, 672 (1987), the North Carolina Supreme Court held that if defendant has not accepted plaintiff's injury as compensable under workers' compensation at the time the payments were made, or if there has not been a determination of compensability by the Industrial Commission, then defendant-employer should be awarded a credit. *See also, Lowe v. BE&K Construction Co.*, 121 N.C. App. 570, 576, 468 S.E.2d 396, 399 (1996).

In its opinion and award, the Commission made the following finding of fact:

> Equitable estoppel arises when one party, by his acts, representations, or silence when he should speak, intentionally, or through culpable negligence, induces a person to believe certain facts exist, and that person reasonably relies on and acts on those beliefs to his detriment. *Long v. Trantham*, 226 N.C. 510, 513, 39 S.E.2d 384, 387 (1946). It is based on the theory that "it would be against principles of equity and good conscience to permit a party against whom estoppel is asserted to avail himself of what . . . otherwise [might] be his undisputed legal rights." *Redevelopment Comm'n v. Hannaford*, 29 N.C. App. 1, 3, 222 S.E.2d 752, 754 (1976). Since plaintiff did not rely to his detriment on any action or representation made by defendants, equitable estoppel does not apply[.]

We hold that the record supports a finding that plaintiff was on notice that his benefits were subject to wage verification. Plaintiff sustained his injury on 21 September 1996 and defendant voluntarily began payments on 24 October 1996. From 24 October 1996 through 24 September 1997, weekly compensation benefits were paid to plaintiff by defendant subject to verification as documented on the Form 60 Agreement. Thus, we are unable to conclude that the Commission abused its discretion in awarding defendant a credit for any overpayment of benefits. This assignment of error is therefore overruled.

Accordingly, we hold that the average weekly wage computed by the Commission is not supported by the evidence and the matter must therefore be remanded for recalculation of plaintiff's average weekly wage and resulting credit toward overpayment of benefits. On remand the Commission shall take such additional evidence as necessary, specify the method employed, and make sufficient findings in order to support its opinion and award.

Affirmed in part, reversed in part, and remanded.

Chief JUDGE EAGLES and JUDGE THOMAS concur.