***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent *Page 2 
evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Donovan with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction over the parties and the subject matter.
2. The parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Worker's Compensation Act.
4. An employment relationship existed between plaintiff and defendant-employer STS Holdings Inc. and Wausau Insurance was the Insurer on the risk on the date of injury of February 18, 2008.
5. Plaintiff's average weekly wage will be determined by a Form 22 and supporting wage documentation to be submitted at the time of hearing. Defendants paid temporary total disability at the rate of $329.58 per week from February 19, 2008, through the present and ongoing. As of October 21, 2008, defendants have paid total temporary total disability benefits of $10,546.56.
 *********** ISSUE
1. The sole issue before the undersigned is the determination of plaintiff's average weekly wage. *Page 3 
 *********** EXHIBITS
1. The following Exhibits were admitted into evidence before the Deputy Commissioner:
 a. Plaintiff's Exhibit #1: Plaintiff's payroll records and correspondence
 b. Plaintiff's Exhibit #2: Computer information regarding salary ranges in aviation
 c. Plaintiff's Exhibit #3: I.C. Forms and payroll records
2. The following depositions were admitted into evidence before the Deputy Commissioner:
 a. Plaintiff (including Thompson Exhibit 1)
 b. Robert E. Scott (including Defendants' Exhibit 1)
 *********** EVIDENTIARY RULINGS
Plaintiff objected to the admission into evidence of the Form 22 Wage chart submitted by defendants, and defendants objected to the admission into evidence of Plaintiff's Exhibit #2. The parties' arguments go to the weight to be given the information contained in the respective exhibits and not their admissibility. Therefore, the parties' objections are overruled. Plaintiff's Exhibit #2 was properly admitted into evidence. The Form 22 wage chart was properly admitted into evidence as part of Plaintiff's Exhibit #3.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Plaintiff has been periodically employed by defendant-employer as an Airframe and Power Plant Mechanic (A P mechanic) for approximately ten years. The title of A P mechanic indicates that plaintiff can work on all elements of an airplane, including but not limited to changing an engine, tire, brakes, generators, or light bulbs, fixing airplane seats, or performing electrical work.
2. In order to become an A P mechanic, plaintiff was required to pass written, oral, and practical exams after completing 18 months of schooling in order to receive a Federal certificate. The Federal certificate allows plaintiff to sign off on log books and work orders for plane repairs. Plaintiff also has additional on-the-job training and certification that allows him to run the engine and taxi planes on the runway.
3. On February 18, 2008, plaintiff was working for defendant-employer under contract with TIMCO in Greensboro, North Carolina, when he tripped over a metal plate, causing him to fall to the ground and injure his right shoulder. The injury has been accepted by defendants as compensable under the Act.
4. For the 52 week period preceding his February 18, 2008, injury by accident, plaintiff was employed by defendant-employer as well as by other contract companies. Between working for defendant-employer and other contract companies, plaintiff worked approximately three weeks per month. Plaintiff worked for defendant-employer when they had a contract that he wanted to take and worked for the other contract companies when defendant-employer did not have a contract that he wanted.
5. Between February 19, 2007, and February 17, 2008 (which is the 52-week period prior to plaintiff's injury by accident), plaintiff elected to work on a total of five contracts *Page 5 
through defendant-employer for a total of 14 days. Specifically, during that time, plaintiff worked for three days in February 2007 (spanning one week), five days in March 2007 (spanning three weeks), one day in August 2007, one day in November 2007, and four days in February 2008 (spanning one week).
6. Defendant-employer pays AP Mechanics using more than one type of payment. They pay a regular hour wage, which is noted on the payroll information as "RG", and an overtime wage, noted as "OT". The hourly and overtime wages are treated by defendant-employer as taxable wages. The hourly wage and overtime wage vary by location of assignment based on various factors.
7. During 52 weeks immediately preceding plaintiff's injury, plaintiff's wages totaled $717.92. Specifically, plaintiff earned $117.95 in regular wages between February 19, 2007, and March 1, 2007; $293.45 in regular wages in March 2007; $64.00 in regular wages in August 2007; $47.52 in regular wages in November 2007; and $195.00 in regular wages between February 11, 2008, and February 17, 2008.
8. On February 19, 2007, plaintiff was in the midst of a contract with AAR in Oklahoma City, OK, on which plaintiff had already worked six days. Specifically, plaintiff began working on that contract on February 13, 2007, and, as of February 19, 2007, had earned a total of $280.00 in regular wages and $245.87 in overtime wages. Therefore, during the 52 weeks between February 5, 2007, and February 3, 2008, plaintiff earned a total of $1048.79.
9. Defendant-employer also pays the travelling mechanic a per diem amount, noted on the payroll records as "PD". The per diem is paid as non-taxable, is set at differing amounts according to the costs of staying in any given location, and is meant to reimburse employees for cost of living expenses while they are on the road. The per diem is set as a maximum weekly *Page 6 
amount, and is paid on a pro-rated basis if the employee works fewer than 40 hours in a particular week. Per diem payments are only available if a worksite is located greater than 50 miles from the employee's permanent residence and the employee certifies to defendant-employer that he is maintaining a temporary residence nearer to the worksite.
10. The maximum allowable per diem allowance for each contract is calculated by defendant-employer using a three step process. Defendant-employer first obtains the maximum allowable per diem rate for the contract city as set forth on the Government Services Administration's (hereinafter "GSA") website. Defendant-employer then reduces the GSA maximum per diem number by 20% to obtain a maximum allowable per diem rate for the contract city. Finally, defendant-employer adjusts its maximum allowable per diem rate downwards, if deemed necessary, based on a review of local costs.
11. Although the per diem is provided to plaintiff in his weekly checks, he may stay wherever he chooses and spend as much on hotels and meals as he wishes. Plaintiff is not required to provide receipts to defendant-employer for his expenses. Defendant-employer's Per Diem Certification and Per DiemPolicy, which each employee is required to execute for each contract assignment, requires that per diem monies not spent are to be refunded to defendant-employer, or they "may become taxable upon review by Federal or State Tax Authorities." The evidence of record tends to show that defendant-employer did not actively seek repayment from plaintiff of unused per diem payments, if any.
12. Defendant-employer's method of calculating per diem amounts is based on federal guidelines under which fixed per diem payments of no more than the GSA maximum allowable amount that are provided to employees on a uniform and objective basis are deemed to be substantiated travel expenses even without proof of such expenses by the employee. The *Page 7 
guidelines further provide that such per diem payments may be treated as deductible business expenses as long as they are provided under a plan which requires that amounts in excess of actual expenses be returned to the employer.
13. During the 52 weeks between February 19, 2007, and February 17, 2008, plaintiff received $1,061.39 in per diem expenses. During the 52 weeks between February 5, 2007, and February 3, 2008, plaintiff received $1635.39 in per diem expenses.
14. Travel pay is offered to an employee in certain situations, and is reflected in the payroll records as "TP". Plaintiff testified that travel pay is granted as an incentive to go to certain worksites, and that it would help with travel expenses. Robert E. Scott, defendant-employer's director of operations at the time of plaintiff's injury by accident, testified that travel pay is used to assist employees in travelling to the job and is paid as a business expense reimbursement. Mr. Scott further testified that travel pay is typically tied to a minimum stay at a particular work cite, and if an employee does not meet the minimum stay, the travel pay is deducted from the employee's final check for that contract as a cost or wage advance. The payroll records indicate that Plaintiff received travel expenses of $250 on February 18, 2007, March 18, 2007, and February 17, 2008. The payroll records do not reflect whether any of those amounts were subsequently deducted from plaintiff's paychecks.
15. Defendant-employer offers employees such as plaintiff wage advances in certain circumstances. Wage advances are reflected in the payroll records as "WA", and are deducted from the employee's subsequent post-tax earnings. The records show that plaintiff received wage advances of $325 in February 2007; $200 in March 2007; and $750.00 in February 2008.
16. The payroll records include additional categories labeled "RC" and "RE". However, the record of evidence does not include sufficient information for the Full Commission *Page 8 
to determine how, or whether, amounts listed in association with those categories may have influenced the wages earned by plaintiff.
17. Based on the evidence of record, the Full Commission finds that defendants' defense of this matter was not based on stubborn, unfounded litigiousness, but instead was made with reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. To calculate plaintiff's average weekly wage, the Full Commission must first determine what constitutes plaintiff's earnings. As an initial matter, plaintiff's regular wages (RG) and overtime pay (OT) contribute to his earnings. Regarding per diem payments (PD) made to plaintiff, N.C. Gen. Stat. § 97-2(5) provides: "Wherever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings." Per diem payments set at a fixed amount regardless of actual employee expenses may be considered part of the employee's earnings. See Greene v. Conlon Const. Co.,184 N.C. App. 364, 646 S.E.2d 652 (2007). However, the per diem payments made by defendant-employer are adjusted depending on locale, and are made subject to a policy that conforms with Federal guidelines that allow the payments to be treated as tax-deductible business expenses without further proof of actual expenses by the employee. See, e.g., Shaw v. U.S. Airways, Inc.,362 N.C. 457, 665 S.E.2d 449 (2008). The Full Commission therefore concludes that the per diem payments received by plaintiff were not made in lieu of wages, but instead were coordinated with plaintiff's actual business-related living expenses. *Page 9 
2. The Full Commission further concludes that the travel payments (TP) made to plaintiff were not made in lieu of wages, but were associated with particular travel obligations; that wage advances (WA) were not made in lieu of wages, but were subsequently deducted from plaintiff's actual wages; and that there is insufficient evidence in the record to demonstrate that "RC" or "RE" amounts listed in defendant-employer's payroll were payments made to plaintiff in lieu of wages. Therefore, plaintiff's earnings under N.C. Gen. Stat. § 97-2(5) include only those amounts denoted by defendant-employer as regular wages (RG) and overtime wages (OT).
3. The Workers' Compensation Act provides five methods by which to calculate a plaintiff's "average weekly wage" under the Act:
 "Average weekly wages" shall mean [Method 1] the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . divided by 52; [Method 2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [Method 3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [Method 4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community. [Method 5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.
N.C. Gen. Stat. § 97-2(5) (bracketed method numbers added). Thus, N.C. Gen. Stat. § 97-2(5) *Page 10 
 establishes an order of preference and . . . the primary method is to calculate the total wages of the employee for the fifty-two weeks of the year prior to the date of the injury, divided by fifty-two. The statute includes a "catch-all" provision, to be used when warranted by "exceptional reasons." However, the final method set forth in N.C. Gen. Stat. § 97-2(5) may not be used unless there has been a finding that unjust results would occur by using the previous methods.
Loch v. Entertainment Partners,148 N.C. App. 106, 110, 557 S.E.2d 182, 185 (2001) (citations omitted).
4. Although plaintiff was also employed by employers other than defendant-employer during the 52 weeks preceding plaintiff's injury by accident, the calculation of plaintiff's average weekly wage must be based only on plaintiff's employment with defendant-employer.See Barnhardt v. Yellow Cab Co.,266 N.C. 419, 146 S.E.2d 479 (1966); McAninch v. Buncombe CountySchools, 347 N.C. 126, 489 S.E.2d 375 (1997). Furthermore, the periodic nature of plaintiff's employment must be reflected in his average weekly wage:
 This employment is inherently part-time and intermittent. It does not provide work in each of the 52 weeks of the year; some weeks the job is nonexistent. It cannot, therefore, be treated as if it were a continuous one with regular wages. Fairness to the employer requires that we take into consideration both peak and slack periods.
Joyner v. A. J. Carey Oil Co.,266 N.C. 519, 146 S.E.2d 447 (1966). See also, Boney v. WinnDixie, Inc., 163 N.C. App. 330, 593 S.E.2d 93 (2004). But seeBond v. Foster Masonry, Inc.,139 N.C. App. 123, 532 S.E.2d 583 (2000) (distinguishingJoyner).
5. Method 1 under N.C. Gen. Stat. § 97-2(5) is inapplicable to the current case because plaintiff did not work continuously during the 52 weeks preceding his injury. Loch v. EntertainmentPartners, 148 N.C. App. 106, 112, 557 S.E.2d 182, 186 (2001) ("We note that this method of calculation is not permitted under N.C. Gen. Stat. § 97-2(5) in computing plaintiff's *Page 11 
average weekly wage, because plaintiff worked less than fifty-two weeks prior to his injury.")
6. Method 2 under N.C. Gen. Stat. § 97-2(5) would result in plaintiff's average weekly wage being calculated by dividing the $717.92 earned by plaintiff in the 52 weeks preceding his injury by accident by seven, the number of weeks or portions of weeks during which plaintiff actually worked. See Bond, supra. The result would be an average weekly wage of $102.56, and a corresponding compensation rate of $68.37 per week. However, at that compensation rate, plaintiff would receive approximately $3500.00 over the course of a year, or nearly five times the amount plaintiff actually earned from defendant-employer in the 52 weeks preceding his injury by accident. The Full Commission concludes that that result is not fair and just to defendant-employer. See Joyner, supra; Loch,supra.
7. If Method 3 is applicable to an employee such as plaintiff who has for an employer in an occasional manner for more than 52 weeks, plaintiff's average weekly wage would probably be calculated by dividing the $717.92 earned by plaintiff in the 52 weeks preceding his injury by accident by 2.8, which is the number of five-day weeks worth of days worked by plaintiff during that period (i.e. 14 days). The result would be an average weekly wage of $256.40 and a corresponding compensation rate of $170.93 per week. Because that compensation rate would result in plaintiff receiving nearly $9000.00 over the course of a year, more than 12 times the amount plaintiff actually earned from defendant employer during the 52 weeks preceding his injury by accident, the Full Commission concludes that that result is not fair and just to defendant-employer. See Joyner, supra; Loch,supra.
8. Method 4 provides for the calculation of plaintiff's average weekly wage based on the wages "being earned by a person of the same grade and character employed in the same class of employment in the same locality or community." N.C. Gen. Stat. § 97-2(5). However, while *Page 12 
plaintiff has submitted evidence regarding the typical wages being earned by an AP mechanic with full-time employment, the record includes no evidence of the wages typically earned by an AP mechanic employed on a periodic contract basis such as plaintiff. The Full Commission therefore concludes that the record is insufficient to support a calculation of plaintiff's average weekly wage in a fair and just manner pursuant to method 4 of N.C. Gen. Stat. § 97-2(5). See Loch, supra.
9. It follows that the use of method 5 for calculating plaintiff's average weekly wage is permitted under Loch. Under method 5, plaintiff's average weekly wage must be calculated using the method that "will most nearly approximate the amount which the injured employee would be earning were it not for the injury." N.C. Gen. Stat. § 97-2(5). Under Joyner, plaintiff's average weekly wage may be calculated based on the amount of earnings plaintiff or a similarly situated employee actually earned over a 52-week period, divided by 52. See also, Boney,supra; Barber v. Going West Transp., Inc.,134 N.C. App. 428, 517 S.E.2d 914 (1999); Conyers v. New HanoverCounty Schools, 188 N.C. App. 253, 654 S.E.2d 745 (2008). However, method 5 may not be used simply as a justification for applying method 1 in a situation in which method 1 is otherwise inapplicable. See Loch, supra.
10. The Full Commission concludes that the 52-week period immediately preceding plaintiff's injury by accident is not the most appropriate 52-week period to use under method 5, because it both begins and ends in the midst of ongoing contracts. The Full Commission therefore concludes that the 52-week period most reflective of the amount plaintiff would be earning but for his injury, as supported by the evidence of record, is the 52-week period between February 5, 2007, and February 3, 2008. SeeLoch, supra.
11. During the period between February 5, 2007, and February 3, 2008, plaintiff *Page 13 
earned $1048.79. Dividing that amount by 52 pursuant to method 5 of N.C. Gen. Stat. § 97-2(5) and Joyner results in an average weekly wage of $20.17, and a corresponding compensation rate of $13.45 per week. Pursuant to N.C. Gen. Stat. § 97-29, plaintiff would be entitled to the minimum disability compensation rate of $30.00 per week. The Full Commission concludes that that result would be fair and just to both plaintiff and defendant-employer under N.C. Gen. Stat. § 97-2(5).
12. Pursuant to N.C. Gen. Stat. § 97-42, the Full Commission, in its discretion, grants defendants a credit for disability compensation payments that have been made in excess of the rate of $30.00 per week found applicable herein. That credit shall not reduce the amount of weekly compensation to which plaintiff is entitled pursuant to this Opinion and Award, but shall instead reduce the term during which compensation is owed to plaintiff, should such a term be established in the future. N.C. Gen. Stat. § 97-42.
13. The Full Commission concludes that defendants had reasonable grounds in this case for opposing plaintiff's Form 33 Request for Hearing on the issue of plaintiff's average weekly wage. Therefore, plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $30.00 per week beginning as of the date of this Order and continuing until further Order of the Commission. *Page 14 
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel in the form of every fourth payment.
3. Defendants are entitled to a credit for payments that have already been made in excess of the compensation rate set forth in Paragraph 1 above.
4. Defendants shall pay the costs.
This the 19th day of February, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
DISSENTING WITHOUT A WRITTEN OPINION:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1