***********
In accordance with the directives of the North Carolina Court of Appeals, the Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
The parties submitted an indexed packet of records consisting of the following:
1. Industrial Commission Filings:
a. Form 18
b. Form 19
c. Form 22
d. Form 60 (2)
e. Form 33
2. Medical Records:
a. MEDAC
b. Wilmington Orthopedic Group
c. The Bone and Joint Surgery Clinic
d. Shipp Medical Management
e. Spectrum Rehabilitation Services.
3. Wage Statements
a. 1990-1997.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent, credible and convincing evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the compensable injury, plaintiff was a 43 year old married male. Plaintiff began occasional employment with defendant-employer as an actor in 1990. On 21 September 1996, he was hired by defendant-employer for a few days work as an actor. On or about 21 September 1996, plaintiff was walking out of the star trailer when he slipped on a step causing him to aggravate a pre-existing knee injury. Plaintiff was seen at a MEDAC, complaining of pain in his right knee. Plaintiff was diagnosed with an acute contusion and sprain of his right knee, given medications, instructed to apply ice and to consult an orthopedic doctor.
2. On 2 October 1996, plaintiff was seen by Dr. William Sutton of Wilmington Orthopedic Group and given a diagnosis of a possible ACL tear, or recurrence of plaintiff's medial meniscus problems. Despite plaintiff's injury, he was able to work for defendant-employer on 4 October 1996 and 11 October 1996. On 11 November 1996, Dr. Sutton performed arthroscopy, debridement and a partial lateral meniscectomy on plaintiff's right knee. Dr. Sutton found plaintiff's ACL stable.
3. On 9 April 1997, Dr. Sutton assigned plaintiff a fifteen percent permanent partial disability to his right knee based upon degenerative findings and partial medial meniscectomy.
4. Plaintiff underwent an independent medical evaluation with Dr. David Rendleman of the Bone and Joint Surgery Clinic in Raleigh, North Carolina. Dr. Rendleman recommended a treatment plan of conservative measures, with a probable need for a joint replacement in the future. Dr. Rendleman saw no evidence of any ACL problems, and consequently did not recommend further surgery or arthroscopy for this condition.
5. On 1 July 1997, Dr. Sutton found plaintiff at maximum medical improvement and returned plaintiff to work with restrictions against climbing, squatting or crawling. Dr. Sutton noted that plaintiff may need further arthroscopic treatment of his knee and requested to see plaintiff in six months.
6. Carrier-defendant voluntarily initiated payment of temporary total disability benefits to plaintiff on 24 October 1996, following plaintiff's 21 September 1996 injury. Plaintiff's benefits were begun at the statutory maximum compensation rate for 1996 of $492.00 per week. Pursuant to the Form 60 Agreement for Payment of Compensation, carrier-defendant initiated payment at this rate subject to verification of plaintiff's wages with defendant-employer.
7. From 24 October 1996 through 24 September 1997, weekly compensation benefits were paid to plaintiff by defendants at the maximum rate of $492.00, subject to verification, as documented on the Form 60 Agreement.
8. Carrier-defendant subsequently obtained plaintiff's wage records and a completed Form 22 Wage Chart. Plaintiff's payroll records show the following yearly incomes earned between 1990 and 1996 while working for defendant-employer: 1990 — $1,138.00; 1991 — $492.80; 1992 — $4,162.50; 1993 — $1,895.57; 1994 — $893.34; 1995 — $2,734.59; 1996 — $1,818.70. The Form 22 Wage Chart shows no earnings by plaintiff in December 1995 or in 1996 for the months of January through August. The Form 22 fails to show the months of September or October 1995. In the 52 weeks preceding the compensable injury, plaintiff worked three days in three different weeks: November 6, 1995, November 17, 1995 and September 21, 1996, for a total of $1,828.00.
9. Based upon the Form 22, but erroneously adding wages shown on the Form 22 but earned by plaintiff after the compensable injury, defendants recalculated a revised average weekly wage of $58.01 and a weekly compensation rate of $38.67.
10. From 25 September 1997 through the present, defendants paid plaintiff reduced benefits at a weekly compensation rate of $38.67.
11. Defendants filed a Form 24 Application to Terminate Benefits dated 1 October 1997, seeking an Order determining plaintiff's average weekly wage. After the Special Deputy Commissioner determined that the issues should be resolved at a full evidentiary hearing, the matter was set for hearing before Deputy Commissioner Phillip Holmes. In lieu of a hearing, the parties agreed that the matter would be decided upon the submission of briefs and stipulated exhibits. The Opinion and Award issued by Deputy Commissioner Holmes is the subject of this appeal.
12. Payroll records and the Form 22 for the period prior to plaintiff's injury reveals that plaintiff did not work for defendant for 52 weeks prior to his injury. The payroll records further show that plaintiff was a sporadic employee. The greater weight of the evidence is that although plaintiff may have made himself available for auditions for employment through defendant-employer, he only worked 1 to 7 days per year at various wages up to $900.00 per day. There is no evidence to suggest that plaintiff reasonably "lost" more than seven (7) calendar days within the year prior to his injury because there is no evidence that plaintiff was employed, or offered employment, by defendant-employer for more than seven (7) days in any year over the seven years of employment with defendant-employer.
 ***********
In accordance with the directives of the North Carolina Court of Appeals and based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Under N.C. Gen. Stat. § 97-2(5), compensation for the injury of an employee is based on his average weekly wage. The dominant intent of N.C. Gen. Stat. § 97-2(5) is to base compensation on the normal income which the employee derived from his employment and that the results be fair and just to both employer and employee. N.C. Gen. Stat. § 97-2(5); Joyner v. A.J. Carey Oil Co., 226 N.C. 519, 146 S.E.2d 447
(1966); Barber v. Going West Transportation, Inc., 134 N.C. App. 428,517 S.E.2d 914 (1999).
2. N.C. Gen. Stat. § 97-2(5) establishes an order of preference for the calculation of an average weekly wage. The primary method for determining average weekly wage is to divide by fifty-two the total wages of the employee for the fifty-two weeks preceding the date of the injury. Bond. V. Foster Masonry, Inc., 139 N.C. App. 123, 532 S.E.2d 583
(2000). In cases in which the preferred first method under N.C. Gen. Stat. § 97-2(5) is not appropriate, the statute provides three additional methods to use in the calculation of a worker's average weekly wage. The fifth method set forth in the statute is to be used when warranted by "exceptional reasons." Postell v. BD Construction Co.,105 N.C. App. 1, 7, 411 S.E.2d 413, 416, disc. review denied, 331 N.C. 286,417 S.E.2d 253 (1992). This final method set forth in N.C. Gen. Stat. § 97-2(5) cannot be used unless there has been a finding that unjust results would occur by using the previous methods. Wallace v. MusicShop, 11 N.C. App. 328, 331, 181 S.E.2d 237, 239 (1971).
3. Given the sporadic nature of plaintiff's work as an actor for the defendant-employer, calculation of plaintiff's average weekly wage under any of the first four calculations under N.C. Gen. Stat. § 97-2(5) results in an unfair and unjust calculation which would not take into account the periods during which plaintiff did not work. A calculation under the first method is not appropriate because plaintiff did not work for 52 weeks before his injury. A calculation under the second method is not fair because plaintiff did not "lose" more than seven days of work in the 52 weeks prior to injury and a calculation which removes the weeks that he did work unreasonably inflates the number of days/weeks that history has shown that plaintiff had been employed. Further, compensation calculated on the second method would cause defendant-carrier to pay compensation at rates far in excess of the wages actually earned by plaintiff upon which premiums were collected. The third method of calculation is not fair because it does not reflect the amounts that plaintiff could have earned. The fourth method of calculation cannot be used because no evidence was presented concerning what other employees made when employed by defendant-employer, or in this industry, for work similar to that performed by plaintiff. Because of the sporadic nature of plaintiff's employment, plaintiff's average weekly wage must be calculated under the fifth method under N.C. Gen. Stat. § 97-2(5) in order to ensure results which are fair and just to both employer and employee. Joyner v. A.J. Carey Oil Co., 266 N.C. 519,146 S.E.2d 447 (1966); Barber v. Going West Transportation, Inc.,134 N.C. App. 428, 517 S.E.2d 914 (1999).
4. The undersigned conclude as a matter of law that plaintiff's average weekly wage must be calculated by the fifth method of N.C. Gen. Stat. § 97-2(5). Based on the evidence that the greatest number of days that plaintiff has worked for defendant-employer was 7 days a year and that his highest daily rate of pay in this employment was $900.00, it is fair and reasonable to calculate that plaintiff's pre-injury wage earning capacity for defendant-employer was $6,300.00 per year. This sum results in an average weekly wage of $121.15 and a compensation rate of $80.77. In contrast to the calculations suggested by the parties and which could be calculated under the other methods of § 97-2(5), these calculations more reasonably approximate the amounts that plaintiff could have earned, based on past history, had it not been for the injury. The undersigned recognize that there is no perfect calculation for plaintiff's average weekly wage and compensation rate because of the sporadic nature of his work and the variations in his rate of pay for different work with defendant-employer. This calculation, however, best reflects the sums which plaintiff could have earned based on his history of employment and avoids the excessive windfall that could result under other methods rejected above.
5. Equitable estoppel arises when one party, by his acts, representations, or silence when he should speak, intentionally, or through culpable negligence, induces a person to believe certain facts exist, and that person reasonably relies on and acts on those beliefs to his detriment. Long v. Trantham, 226 N.C. 510, 513, 39 S.E.2d 384, 387
(1946). It is based on the theory that "it would be against principles of equity and good conscience to permit a party against whom estoppel is asserted to avail himself of what . . . otherwise [might] be his undisputed legal rights." Redevelopment Comm'n v. Hannaford,29 N.C. App. 1, 3, 222 S.E.2d 752, 754 (1976). Since plaintiff did not rely to his detriment on any action or representation made by defendants, equitable estoppel does not apply. Therefore, defendants are entitled to a credit for indemnity payments made from 24 October 1996 through 24 September 1997 at the incorrect average weekly wage of $492.00 per week which resulted in an overpayment of benefits. Long v. Trantham,226 N.C. 510, 513, 39 S.E.2d 384, 387 (1946); N.C. Gen. Stat. § 97-42.
6. Plaintiff is entitled to receive total disability benefits at the compensation rate of $80.77 per week beginning 25 September 1997 and continuing until further order of the Commission. N.C. Gen. Stat. §97-29.
 ***********
Therefore, in accordance with the directives of the North Carolina Court of Appeals and based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation at the rate of $80.77 per week beginning 25 September 1997 and continuing until further order of the Commission, subject to attorney's fees as discussed below.
2. Defendants are entitled to receive as a credit toward future indemnity benefits owed, representing an overpayment of benefits from 24 October 1996 through 24 September 1997 at the incorrect compensation rate of $492.00 per week rather than the compensation rate of $80.77.
3. An attorney's fee of 25% of the compensation benefits due plaintiff in Paragraph 1 of this award is approved. The amount that has accrued shall be deducted and sent directly to plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth compensation check due plaintiff under this award.
4. Defendants shall pay the costs of this action.
This the ___ day of July, 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/______________ DIANNE C. SELLERS COMMISSIONER