The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the material submitted to the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of the period of employment from which plaintiffs average weekly wage is calculated.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
The parties submitted an indexed packet of records consisting of the following:
1. Industrial Commission Filings:
a. Form 18
b. Form 19
c. Form 22
d. Form 60 (2)
e. Form 33
2. Medical Records:
a. Medac;
b. Wilmington Orthopedic Group
c. The Bone and Joint Surgery Clinic;
d. Shipp Medical Management; and
e. Spectrum Rehabilitation Services.
3. Wage Statements
a. 1990-1997.
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 44 year old married male. Plaintiff began occasional employment with defendant-employer as an actor in 1990. On 21 September 1996, he was hired by defendant-employer for a few days work as an actor. On or about 21 September 1996, plaintiff was walking out of the star trailer when he slipped on a step causing him to aggravate a pre-existing knee injury. Plaintiff was seen at a MEDAC, complaining of pain in his right knee. Plaintiff was diagnosed with an acute contusion and sprain of his right knee, given medications, instructed to apply ice and to consult an orthopedic doctor.
2. On 2 October 1996, plaintiff was seen by Dr. William Sutton of Wilmington Orthopedic Group and given a diagnosis of a possible ACL tear, or recurrence of plaintiffs medial meniscus problems. Despite plaintiffs injury, he was able to work for defendant-employer on 4 October 1996 and 11 October 1996. On November 11, 1996, Dr. Sutton performed arthroscopy, debridement and a partial lateral meniscectomy on plaintiffs right knee. Dr. Sutton found plaintiffs ACL stable.
3. On 9 April 1997, Dr. Sutton assigned plaintiff a fifteen percent permanent partial disability to his right knee based upon degenerative findings and partial medial meniscectomy.
4. Plaintiff underwent an independent medical evaluation with Dr. David Rendleman of the Bone and Joint Surgery Clinic in Raleigh, North Carolina. Dr. Rendleman recommended the treatment plan of conservative measures, with a probable need for a joint replacement in the future. Dr. Rendleman saw no evidence of any ACL problems, and consequently did not recommend further surgery or arthroscopy for this condition.
5. On 1 July 1997, Dr. Sutton found plaintiff at maximum medical improvement and opined that he could return to work with restrictions against climbing, squatting or crawling. Dr. Sutton noted that the plaintiff may need further arthroscopic treatment of his knee and requested to see the plaintiff in six months.
6. Carrier-defendant voluntarily initiated payment of temporary total disability benefits to plaintiff on 24 October 1996, following plaintiffs 21 September 1996 injury. Plaintiffs benefits were begun at the statutory maximum compensation rate of $492.00 per week. Carrier-defendant initiated payment at this rate subject to verification of plaintiffs wages with defendant-employer.
7. Carrier-defendant subsequently obtained plaintiffs wage records and a completed Form 22 Wage Chart. The Form 22 Wage Chart shows no earnings by plaintiff in 1996 for the months of January through August. The Form 22 Wage Chart reflected earnings of $594.00 in September 1996 and $1,188.00 in October 1996. For November 1995, the Form 22 Wage Chart shows earnings of $1,234.53. Accordingly, in the twelve months preceding the injury, plaintiff earned a total of $3,016.53 working for defendant-employer which equates to an average weekly wage of $58.01, and a weekly compensation rate of $38.67.
8. Plaintiffs payroll records show the following yearly incomes earned between 1990 and 1996 while working for defendant-employer: 1990 — $1,138.00; 1991 — $492.80; 1992 — $4,162.50; 1993 — $1,895.57; 1994 — $893.34; 1995 — $2,734.59; 1996 — $1,818.70.
9. In his seven year employment with defendant-employer, plaintiff never made more than $4,162.50 (1992) in a given year. Plaintiff has voluntarily been paid compensation at the statutory maximum compensation rate of $492.00 or $25,584.00 annually.
10. From 24 October 1996 through 24 September 1997, weekly compensation benefits have been paid to plaintiff by defendants at the maximum rate of $492.00, subject to verification, as documented on the Form 60 Agreement.
11. From 24 September 1997 through the present, defendants have paid to plaintiff reduced benefits at a weekly compensation rate of $38.67.
12. Defendants filed a Form 24 Application to Terminate Benefits dated 1 October 1997, seeking an Order determining plaintiffs average weekly wage. Special Deputy Commissioner Amy L. Pfeiffer filed an Administrative Order dated 24 February 1998, ruling the matter would be determined better at a full evidentiary hearing and expedited the same pursuant to N.C. Gen. Stat. 97-18.1(d).
13. Although the initial Form 60 indicates an average weekly wage of $492.00, that wage was subject to verification as noted in two separate places on the Form. Therefore, plaintiff did not reasonably rely to his detriment on any representation by defendants that there was an agreement or a promise that plaintiff would receive benefits based on an average weekly wage of $492.00.
 * * * * * * * * * * *
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Under N.C. Gen. Stat. 97-2(5), compensation for the injury of an employee is based on his average weekly wages. The dominant intent of N.C. Gen. Stat. 97-2(5) is to base compensation on the normal income which the employee derived from his employment and that the results be fair and just to both employer and employee. N.C. Gen. Stat. 97-2(5); Joyner v. A.J. Carey Oil Co.,266 N.C. 519, 146 S.E.2d 447 (1966); Barber v. Going WestTransportation, Inc., No. COA98-494 (N.C.App. Aug. 3, 1999).
2. Given the part-time and intermittent nature of plaintiffs work as an actor for the defendant-employer, calculation of plaintiffs average weekly wage under the first three calculations of N.C. Gen. Stat. 97-2(5) results in an unfair and unjust calculation which would not take into account the periods during which plaintiff did not work. Therefore, plaintiffs average weekly wage must be calculated under the fourth method under N.C. Gen. Stat. 97-2(5) in order to ensure results which are fair and just to both employer and employee. Joyner v. A.J. Carey OilCo., 266 N.C. 519, 146 S.E.2d 447 (1966); Barber v.Going West Transportation, Inc., No. COA98-494 (N.C.App. Aug. 3, 1999).
3. The undersigned conclude as a matter of law that plaintiffs average weekly wage must be calculated by taking the total earnings for the 52 weeks preceding his disability and dividing that amount by 52. Barber v. Going West Transportation,Inc., No. COA98-494 (N.C.App. Aug. 3, 1999). Plaintiffs earnings from defendant-employer during the 52 weeks prior to his disability total $3,016.53, which equates to an average weekly wage of $58.01, yielding a compensation rate of $38.67. N.C. Gen. Stat. 97-5(2).
4. Equitable estoppel arises when one party, by his acts, representations, or silence when he should speak, intentionally, or through culpable negligence, induces a person to believe certain facts exist, and that person reasonably relies on and acts on those beliefs to his detriment. Long v. Trantham,226 N.C. 510, 513, 39 S.E.2d 384, 387 (1946). It is based on the theory that "it would be against principles of equity and good conscience to permit a party against whom estoppel is asserted to avail himself of what . . . otherwise [might] be his undisputed legal rights. Redevelopment Commn v. Hannaford, 29 N.C. App. 1, 3,222 S.E.2d 752, 754 (1976). Since plaintiff did not rely to his detriment on any action or representation made by defendants, equitable estoppel does not apply. Therefore, defendants are entitled to a credit for indemnity payments made from 24 October 1996 through 24 September 1997 at the incorrect average weekly wage of $492.00 per week which resulted in an overpayment of benefits. Long v.Trantham, 226 N.C. 510, 513, 39 S.E.2d 384, 387 (1946); N.C. Gen. Stat. 97-42.
5. Plaintiff is entitled to receive temporary total disability benefits at the compensation rate of $38.67 per week until further order of the Commission. N.C. Gen. Stat. 97-29.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation at the rate of $38.67 per week until further order of the Commission, subject to attorneys fees as discussed below.
2. Defendants are entitled to receive as a credit toward future indemnity benefits owed, representing an overpayment of benefits from 24 October 1996 through 24 September 1997 at the incorrect compensation rate of $492.00 per week rather than the compensation rate of $38.67.
3. An attorneys fee of 25% of the compensation benefits due plaintiff in Paragraph 1 of this award is approved. The amount that has accrued shall be deducted and sent directly to plaintiffs counsel. Thereafter, plaintiffs counsel shall receive every fourth compensation check due plaintiff under this award.
4. Defendants shall pay the costs of this action.
This the ___ day of April, 2000.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ____________________ RENÉE C. RIGGSBEE COMMISSIONER
S/ ____________________ DIANNE C. SELLERS COMMISSIONER
LKM:jbd