***********
The undersigned reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Stephenson. There are no good grounds shown to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer on 11 July 2001.
3. The Hartford is the carrier at risk.
4. Plaintiff's average weekly wage is at issue.
5. On 11 July 2001 plaintiff sustained a compensable injury to his left leg arising out of and in the course of his employment with defendant-employer. Plaintiff has received temporary total disability in the amount of $333.35 since 11 July 2001 based upon an estimated average weekly wage of $500.00.
6. Plaintiff's medicals are admitted into evidence as Stipulated Exhibit # 2. These include the following:
1. Functional Capacity Examinations;
2. FirstHealth Richmond Memorial Hosptial;
3. Dr. James M. Currin, Jr.;
4. Therapy Records of Scotland Memorial Hospital;
5. Scotland Memorial Hospital;
6. 10 December 2001 letter from Dr. Paul Rush to H. Bright Lindler;
7. Letter of 22 January 2002 from Brent A. Vormer; and
8. Dr. Paul F. Rush
7. The following Industrial Commission Forms are admitted into evidence as Stipulated Exhibit # 3:18, 19, 63, 25N, Amended 33, 33R and 25R.
8. Defendants admit compensability with regard to plaintiff's left leg injury but denied any injury to plaintiff's back. Plaintiff listed the disputed back claim on the request for hearing but withdrew this claim at the hearing.
9. The issues to be determined is what is plaintiff correct average weekly wage and what benefits is plaintiff entitled. Defendant-employer has also raised suitable employment and plaintiff has raised the issue of attorney fees.
 ***********
Based upon all of the competent evidence of record, the undersigned makes the following additional
 FINDINGS OF FACT
1. On 11 July 2001 plaintiff was 47 years old and was employed by defendant-employer as a mobile home salesperson. On that date he fell while assisting a wheelchair bound customer up the steps of a motorhome. As a result plaintiff injured his left leg.
2. On 11 July 2001 plaintiff had been employed with the defendants for three (3) days. Defendants began payment of temporary total disability to plaintiff at a compensation rate of $333.35 per week beginning on 11 July 2001. This rate was based on a $500.00 per week average weekly wage.
3. Mobile home salespersons typically work on commission. The greater weight of the evidence is that plaintiff was hired by defendant-employer at fifteen percent (15%) commission. Plaintiff made a sale during his first three (3) days that resulted in $11,000.00 to defendant-employer. Fifteen percent (15%) commission of this sale would be $1650.00 to plaintiff.
4. The undersigned find that it is not just or fair to use methods one through four in calculating the plaintiff's average weekly wage as they are either inapplicable or would produce results which are not fair to both parties. Therefore, the undersigned shall use the fifth method of calculating the plaintiff's average weekly wage.
5. Plaintiff received initial treatment from First Health Richmond Memorial Hospital on 11 July 2001. Dr. Collins performed a surgical repair of the left leg laceration. Plaintiff was referred to Dr. Rush for follow-up treatment. Physical therapy increased plaintiff's range of motion and leg strength.
6. Dr. Rush filled out a physical capabilities evaluation indicating plaintiff could return to sedentary employment with restrictions on 22 August 2001. On 12 September 2001 Dr. Rush noted plaintiff could return to sedentary employment with the ability to keep the left leg elevated.
7. Defendant-employer had a modified salesperson position available for plaintiff on 26 October 2001. Plaintiff turned down the position. Other than showing a mobile home, the office duties of closing and following a sale could be performed by plaintiff. However, defendants did not address how compensation would be handled since mobile home salesmen are paid on a commission for the completed sale. It is not clear whether plaintiff would share commission with another salesman or some other agreement. Although an office manager position may be suitable for plaintiff, defendant-employer already has an office manager and does not appear to need another one. Thus, without further details and clarifications, plaintiff was justified in refusing the position as this position was not suitable for the plaintiff.
8. On 7 December 2001 plaintiff reached maximum medical improvement. The leg elevation requirements are permanent restrictions. Although Dr. Rush had previously estimated a twenty percent (20%) disability rating, he assigned a fifteen percent (15%) permanent partial disability rating to plaintiff's left leg in February 2002.
9. Plaintiff may be suitable for vocational training if approved by his doctor. Since plaintiff has predominantly worked in "sales" with some limited administrative functions, he may benefit from additional administrative training so he can perform a sedentary job.
10. It was necessary to have a hearing with regard to these issues.
 ***********
The foregoing findings of fact, and conclusion of law engender the following additional:
 CONCLUSIONS OF LAW
1. On 11 July 2001 plaintiff sustained a compensable injury to his left leg arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Under N.C. Gen. Stat. § 97-2(5), compensation for the injury of an employee is based on his average weekly wages. The dominant intent of N.C. Gen. Stat. § 97-2(5) is to base compensation on the normal income which the employee derived from his employment and that the results be fair and just to both employer and employee. N.C. Gen. Stat. § 97-2(5); Joyner v. A.J. Carey OilCo., 226 N.C. 519, 146 S.E.2d 447 (1966); Barber v. Going WestTransportation, Inc., No. COA98-494 (N.C.App. Aug. 3, 1999).
3. Given the very short duration of plaintiff's work for the defendant-employer, calculation of plaintiff's average weekly wage under the first four calculations of N.C. Gen. Stat. §97-2(5) results in an unfair and unjust calculation. Therefore, plaintiff's average weekly wage must be calculated under the fifth method under N.C. Gen. Stat. § 97-2(5) in order to ensure results which are fair and just to both employer and employee.Joyner v. A.J. Carey Oil Co., 266 N.C. 519, 146 S.E.2d 447
(1966); Barber v. Going West Transportation, Inc., No. COA98-494 (N.C.App. Aug. 3, 1999).
4. The undersigned conclude as a matter of law that plaintiff's average weekly wage must be calculated by computing the average weekly wage which will most nearly approximate the amount which the injured employee would be earning were it not for the injury. Plaintiff's earnings from defendant-employer during the 3 days prior to his disability total $11,000.00 to defendant-employer. Fifteen percent (15%) commission of this sale would be $1650.00 to plaintiff. Consequently, the plaintiff is entitled to the maximum compensation rate for 2001 which is $620.00. N.C. Gen. Stat. § 97-5(2).
5. Plaintiff did not unjustifiably refuse suitable employment such that his benefits should be suspended. N.C. Gen. Stat. §97-32.
6. Plaintiff is entitled to temporary total disability at a rate of $620.00 per week from 11 July 2001 until further Order of the Commission. Plaintiff is entitled to a lump sum payment of the additional compensation due him for the underpayment of his compensation rate. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to have defendants provide all medical treatment arising from the 11 July 2001 injury to the extent it tends to affect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
8. Neither party is entitled to attorney fees or costs pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney fee herein approved, defendants shall pay to plaintiff temporary total disability compensation at the maximum compensation rate for 2001 in the amount of $620.00 per week from 11 July 2001 and continuing until further Order of the Commission. Plaintiff is entitled to a lump sum payment for the additional compensation due to him for the underpayment of his compensation rate.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on 11 July 2001, for so long as such examinations, evaluations and treatment may be reasonably necessary to affect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the lump sum compensation awarded plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from those amounts and payable directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be payable directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ February 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER