* * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant Key Risk Management Services was the carrier on the risk.
3. An employee-employer relationship existed between the parties on October 11, 2001.
4. Plaintiff's average weekly wage was $438.41, which yielded a compensation rate of $292.29 per week, based on the Form 22.
5. The issues for determination are as follows:
 a. Whether plaintiff's injury of October 11, 2001, as a result of an episode of violence in a public school entitles plaintiff to benefits under the Act and/or pursuant to N.C. Gen. Stat. § 115C-338?
 b. Whether plaintiff is entitled to attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88.1?
7. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit 1 consists of plaintiff's medical records
 b. Stipulated Exhibit 2 consists of Industrial Commission Forms
c. Stipulated Exhibit 3 consists of Key Risk reports
d. Stipulated Exhibit 4 consists of correspondence
 e. Stipulated Exhibit 5 consists of plaintiff's Notice pursuant to N.C. Gen. Stat. § 115C-338
 f. Stipulated Exhibit 6 consists of defendant's discovery responses
 g. Stipulated Exhibit 7 consists of plaintiff's absence report
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 42 years old. She is a high school graduate and obtained a certificate for Early Childhood Education from Cape Fear Community College. Plaintiff worked as a volunteer for Noble Middle School for two years, then on September 3, 1998, obtained employment at the school as a Teacher's Assistant in Life Skills Two Classes.
2. Plaintiff's job duties involved providing support for the teacher in the instruction of approximately 20 students. The students were learning disabled, physically handicapped and emotionally disabled. Plaintiff's individual duties included participation in and direction of all aspects of the learning experience of the students, both as a group and individually.
3. On October 11, 2001, plaintiff and another teacher's assistant were in charge of a special education class while the primary teacher was away from the room. An autistic student who was 14 years old at the time of the incident, approximately 5'6" tall and weighed approximately 180 pounds, became violent and wanted to leave the classroom. Plaintiff was instructed that in crisis intervention she was to stand behind the student and hold the student's arms. Plaintiff, who is approximately 5'4" tall, unsuccessfully attempted to restrain the student. Plaintiff was pushed by the student into the corner of a slate top desk and fell to the floor, sustaining injuries to her shoulders, arm, hip, pelvic joint and tailbone. A male teacher from another classroom entered the room and successfully restrained the student.
4. Plaintiff reported her injury to the supervising teacher, Mr. Smith, and to the principal, Mr. Furr. A Form 19 was completed October 11, 2001.
5. Plaintiff presented to MEDAC on October 11, 2001, with complaints of discomfort and soreness in her left hip, shoulder and neck. She was diagnosed with an acute lumbar and pelvic injury and an orthopedic follow-up was recommended to rule out a possible herniated disc. Plaintiff returned to full duty work as of October 15, 2001, with a lifting restriction of 10 pounds and the admonition that she limit any activity that caused or increased her pain.
6. Plaintiff returned to work on October 15, 2001.
7. Plaintiff was referred to Dr. Albert W. Marr with Wilmington Orthopedic but was unable to obtain an appointment until December 31, 2001. In the interim, plaintiff presented to Coastal Chiropractic Center on October 12, 2001, and again on October 23, 2001. Plaintiff did not return for further treatment due to defendants' refusal to approve the treatment.
8. When plaintiff presented to Wilmington Orthopedic she was continued on medication and referred to a psychiatrist, Dr. Alan Tamadon. In addition, at the direction of Wilmington Orthopedic, plaintiff underwent physical therapy with Health South from December 21, 2001, until April 2, 2002, when therapy was discontinued upon recommendation of plaintiff's treating physician.
9. On April 5, 2002, plaintiff presented to Dr. Tamadon and was diagnosed with interscapular strain, cervical strain, lumbrosacral strain and disturbance of skin sensation in the left upper extremity and myofascial pain. Dr. Tamadon ordered an MRI of the neck and low back, which was performed on April 8, 2002. The MRI showed plaintiff's back was normal. The MRI of plaintiff's neck showed disk osteophyte complexes at C4-5, a disk bulge at C5-6 with spur, and a paracentral disk osteophyte complex at C6-7 on the right. Dr. Tamadon opined that plaintiff's condition was not new and the MRI did not show any acute events. He referred plaintiff to an orthopedic surgeon, Dr. Foster, to see if her abnormality required surgery.
10. On March 1, 2002, the Industrial Commission approved a one-time examination of plaintiff by orthopedic surgeon, Dr. Patrick M. Curlee. Dr. Curlee was subsequently authorized as plaintiff's treating physician. Plaintiff presented to Dr. Curlee on April 15, 2002, with complaints of neck and low back pain. Dr. Curlee's examination revealed a diminished range of motion of the cervical spine and some diminished motion of the lumbar spine, some tenderness in both the cervical spine and the lower back that extended over her left buttock.
11. Dr. Curlee diagnosed plaintiff with chronic cervical strain, lumbar strain and possible left-sided facet joint injury at the lumbosacral junction. He recommended an MRI of the lumbar and cervical spine that was already scheduled for the next day.
12. Plaintiff returned to Dr. Curlee on July 5, 2002, with reports that her neck pain had improved following at-home physical therapy but that she continued to experience lower back and left buttock pain. Plaintiff's MRI showed overall normal alignment, with degenerative disk disease at the L5-S1 level. There were no herniations or neural compression and no other significant abnormalities noted. Dr. Curlee diagnosed plaintiff with a large central C6 disk/osteophyte complex that he opined was responsible for plaintiff's C6 distribution dysesthesias. He also found a large left-sided C4-5 disk/osteophyte that was currently asymptomatic, left-sided sacroiliac joint pain and coccygodynia (painful tailbone).
13. Dr. Curlee recommended a series of injections in plaintiff's lower back and SI joint to relieve the pain and assist in localizing the source of plaintiff's pain. Due to previous adverse experience with reactions to medications, plaintiff declined to submit to the injections at that time. Dr. Curlee recommended that plaintiff undergo a SPECT scan to detect any possible occult fractures that might not be readily apparent on an x-ray.
14. Dr. Curlee continued to treat plaintiff with medication throughout 2002. The SPECT scan was performed in January 2003 and did not reveal any fractures of plaintiff's lumbar spine or pelvis. Dr. Curlee treated plaintiff again on January 30, 2003. Plaintiff reported that her neck pain was somewhat less frequent, but her left side lower back and buttock pain continued.
15. Dr. Curlee opined that plaintiff's neck and low back problems have a "very poor potential to heal" or to "get better on their own" and that plaintiff will continue with intermittent episodes and waxing and waning of both her neck pain and buttock pain.
16. In his deposition testimony, Dr. Curlee stated that it would be reasonable for plaintiff to miss work intermittently due to pain in her neck or lower back. He further opined that plaintiff has a significant chance of requiring surgery in the future.
17. Dr. Curlee testified that he had neither placed any formal work restrictions or limitations on plaintiff nor assigned a rating to plaintiff's neck or back.
18. Due to plaintiff's medical treatment and pain, she also missed occasional days from work for defendant-employer and used her earned sick leave or vacation time to obtain full wages for those days. Plaintiff also contends that her injury prevented her from participating in her husband's fishing business, which she normally did during the summer months.
19. The competent evidence in the record establishes that plaintiff elected to be paid her ten-month salary over a twelve-month period and therefore received a paycheck during the summer months.
20. As of the time the record closed, plaintiff had not reached maximum medical improvement.
21. Defendants have not defended this action unreasonably or without justification.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 115C-337(a) provides that the Workers' Compensation Act shall be applicable to all school employees. Liability of the State for compensation shall be confined to school employees paid by the State from State school funds for injuries or death caused by accident arising out of and in the course of their employment in connection with the State-operated school term. The State shall be liable for this compensation on the basis of the average weekly wage of the employees as defined in the Workers' Compensation Act, to the extent of the proportionate part of each employee's salary that is paid from State funds.
2. Pursuant to N.C. Gen. Stat. § 115C-338(b), any employee who sustains an injury as a result of an episode of violence shall be entitled to receive full salary during the shortest of these periods: one year, the continuation of disability, or the time during which the employee is unable to engage in employment because of injury. The statute further provides these benefits shall be in lieu of all other income or disability benefits payable under workers' compensation to such employee only during the period prescribed herein. Thereafter, such teacher shall be paid such income or disability payments to which (s)he might be entitled under workers' compensation.
3. On October 11, 2001, plaintiff sustained an injury by accident to her hip, pelvic joint, tailbone, neck and back arising out of and in the course of and scope of her employment with defendant-employer and as a direct result of a specific traumatic incident of the work assigned. This injury was also the result of an episode of violence while plaintiff was engaged in the course of her employment on October 11, 2001. N.C. Gen. Stat. §§ § 97-2(6) and 115C-338(b).
4. Plaintiff is therefore entitled to her full salary for the time during which she was unable to engage in her employment with defendant-employer due to her injury, which encompasses only the days missed at work for defendant-employer as of the last day of school for the 2001-2002 school year, to be determined by the parties using defendant-employer's business and personnel records. The evidence is not clear which days claimed by plaintiff are attributable to medical visits or to pain resulting from her compensable injuries, but plaintiff's recovery is limited to those days which she would otherwise have been assigned to work and does not include regular vacation days from work. As plaintiff has received full salary for those days by taking earned sick leave or vacation days, she is not eligible for additional compensation for those days, but is entitled to have her earned time returned to her by defendants. N.C. Gen. Stat. § 115C-338.
5. When an employee who holds two separate jobs is injured in one of them, compensation is based only upon the average weekly wage earned in the employment producing the injury. Joyner v.Oil Co., 266 N.C. 519, 521, 146 S.E. 2d 447, 449 (1966) N.C. Gen. Stat. § 97-2(5) provides that "average weekly wages" shall mean the earnings of the injured employee in the employment in which she was working at the time of the injury. Accordingly, the calculation of plaintiff's average weekly wage shall not include wages or income earned in employment or work other than that in which the employee was injured. McAninch v. Buncombe CountySchools, 347 N.C. 126, 489 S.E.2d 375 (1997).
6. Plaintiff is not entitled to full wage compensation pursuant to N.C. Gen. Stat. § 115C-338 for any time missed in employment other than that with defendant-employer.
7. The plaintiff is entitled to have defendants pay for medical treatment and expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident as may be required to provide relief, effect a cure or lessen the period of disability, including payment to Cape Fear Hospital in the amount of $520.02, but not including reimbursement to plaintiff's attorney for her travel for the taking of medical deposition. N.C. Gen. Stat. §§97-2(19); 97-25; 97-25.1.
8. Defendants have not defended this action unreasonably or without justification. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff her full salary as compensation due under N.C. Gen. Stat. § 115C-338 for the time during which she was unable to engage in her employment with defendant-employer due to her injury, which encompasses only the days missed at work for defendant-employer as of the last day of school for the 2001-2002 school year, to be determined by the parties using defendant-employer's business and personnel records.
2. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the Act, including payment to Cape Fear Hospital in the amount of $520.02, but not including reimbursement to plaintiff's attorney for her travel for the taking of the medical deposition.
4. Plaintiff is entitled to have her earned time reinstated to her by defendant for time taken for medical treatment or pain related to her compensable injury.
5. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event the parties are unable to agree on the amount of permanent partial disability compensation, if any, to which may be due, either party may request a hearing from the Commission to resolve this issue.
6. Defendants have not defended this action unreasonably or without justification.
7. Defendants shall pay costs of this action.
This the __ day of May 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN